Ms. George. Good morning, Your Honors. May it please the Court, Tracey George for Appellant Bader Farms. Your Honors, there's one Eighth Circuit case that controls and decides the outcome of this appeal. And that's the Bader One panel's decision in the first appeal of this case. The Bader One mandate and opinion required the District Court on remand to hold a new trial on the single issue of punitive damages. Why? Because the Bader One panel identified the following error. The evidence established differing degrees of culpability between the co-conspirators and the District Court should have instructed the jury to separately assess punitive damages against Monsanto and BASF. So, for that reason, the Bader One panel vacated the punitive award, sent it back to the District Court, and told it to hold a new trial on that single issue. But the District Court, again, refused to submit that separate assessment to the jury, refused to hold a new trial, and dismissed Bader Farms' punitive damages claim. Counsel, did you ever find a case where there's a change in circumstances between this opinion and, of course, what the District Court did, a big change in circumstance where there's a settlement with Monsanto? In the other case, it would be a settlement with a similar party. I didn't word the question very well, but I think you got the point. I think I understand your question, Judge. I'm sure you'll tell me if I get, if I miss the mark. No, I didn't find a case in which there was a change of circumstances, but I wasn't looking for one, Your Honor, honestly, because there was no change of circumstances here. There was no relevant change in circumstances as it pertains to BASF. The settling of Monsanto's separate and several liability for punitive damages does not in any way alleviate BASF's liability. It's own several and independent liability for its reckless indifference in the course of the conspiracy. So we already had, at the time of the first appeal, an award of punitive damages separately and severally against Monsanto based upon its own independent conduct. In fact, the jury was instructed to only consider Monsanto's conduct when it awarded punitive damages against Monsanto. Juries are assumed to follow their instructions. They assessed Monsanto with an amount by operation of law. BASF shared in the joint and several liability of that due to the joint venture finding. They also shared in the joint and several liability of the compensatory amount due both to the conspiracy finding and the joint venture finding. So on remand, the settling of Monsanto's own separate liability for punitive damages in no way gets BASF off the hook for its liability for reckless indifference in the course of the conspiracy. Did I answer your question? Proceed. Great. There are three reasons why the failure to hold a remand trial is error and causes this court to need to send this back with instructions to follow the mandate. First of all, that violated the mandate rule. The mandate rule requires the district court to strictly obey and adhere not only to the mandate and the remand instructions, but to the letter and decision and the court failed to do that. Number two, the district court based its dismissal of BASF on a fundamental error of Missouri law. The district court held that absent a claim of negligence against BASF, obviously it cannot be liable for punitive damages. That's not the law. Co-conspirators in Missouri can be liable for punitive damages based upon their own reckless indifference in the course of that conspiracy. Number three, the court erred because it did not allow a jury to assess the punitive award, and that's a question for the fact finder. Whether or not the evidence supports the submission is a question of law, which the Bader 1 panel decided de novo. However, once that decision is made, the assessment is for the fact finder, and the judge took that away from the fact finder, usurping the fact finder's authority. So, as it pertains to issue one, the mandate rule. The mandate is not worth the paper it's written on. If the judge at the district court on remand can examine it, decide if it's right or wrong, choose to ignore portions of it, defer to its own contrary pre-appeal rulings, we would have a mess on our hands. If every time the court mandated with instructions to hold a new trial, the district court could decide, maybe I don't want to because of a different outcome that I decided that conflicts with the appellate court. Certainly, the Bader 1 panel decided three issues of law upon which the entire remand order depended. One, that there was clear and convincing evidence that both Monsanto and BASF acted with reckless indifference. Number two, they were in fact co-conspirators. That was affirmed, and under Missouri law, the Bader 1 panel found co-conspirators are entitled to a separate assessment of their punitive liability when, as the Bader 1 panel found, there are differing degrees of culpability reflected in the evidence. Now, because each of those legal conclusions were found, that required a new trial to separately assess punitive damages. Without each of those, there would be no reason to remand this case. Because if there were not clear and convincing evidence that BASF acted with reckless indifference, it would be no error at all to fail to submit that question to a jury. This court, the Bader 1 panel necessarily found, when it concluded that the court should have let a jury assess that, necessarily found that there was evidence to support a submission, because Rule 61 does not allow the appellate court to vacate or to send back for a new trial based upon a harmless error. So that issue had to be decided, and the Bader 1 panel was well within its authority to decide that. That's part and parcel of the decision of whether or not BASF was entitled to the individualized inquiry that it asked for. BASF asked for an individualized assessment, said we should not face punitive liability without an individualized assessment. In its opening brief, it said there's no basis for joint or several liability without an individualized assessment. And the Bader 1 panel gave BASF what it asked for. You know, here, this isn't just an odd case. It's just strange things have happened in it. But really, the fundamental problem is this, is that there was an order that was never reduced to writing, that was never docketed as an order, that was lost in the record, and I wasn't on Bader 1, but I'm looking at what the record was before Bader 1 and what the record was before us. Finding that order is not an easy thing to do, right? And when it goes back to Judge Limbaugh, Judge Limbaugh says, well, that's all fine and dandy, but my order's law of the case. It was never repealed, and it's the law of the case, and it applies. And so the train leaves the station from there in a direction you don't want it to go. Right? But what are we supposed to do with this order that is never docketed, right? It's just, and so what you do is you go back and you just keep looking where Judge Limbaugh said, in my previous order, or I previously ordered. And so you then just have to finally just go through and start searching the transcript of every hearing before that till you find where there's a one page and a paragraph where he said what he said. And now he says that's the law of the case. And I just gotta tell you that as a circuit judge, a district judge, I've never seen this before. And I just don't know, I mean, I do understand the law of the case doctrine is that if you make an order and it's out there and it's been relied upon and it's never been appealed, it's the law of the case and that's the way it is. But I've never seen something in this procedural footing and then have the district judge say, by the way, everything's dicta because you ignored the law of the case on an issue that wasn't appealed. So what are we supposed to do with that? Well, I do agree that the lack of a formal order does make it difficult to sift through and determine whether a decision was made and what the basis was for it. But the court, fortunately, doesn't have to do that. Because all of those interlocutory orders and opinions are reduced into a judgment after the verdict. And that judgment is what sets out the rights and the liabilities of the parties. Parties don't appeal from opinions. They don't appeal from these interlocutory decisions. They appeal from the judgment. And that's what happened in this case. The BASF appealed its joint and several liability for punitive damages under the judgment. Because regardless of what the district court held on what could or couldn't go to the jury, at the end of the day, Bader firm secured a joint and several punitive damages liability verdict against BASF. So when BASF appeals that question, its liability for punitives, its entitlement to an individualized assessment to the Bader 1 panel, that judgment and any order that culminated in that judgment is before the court to decide. And the panel can, the panel is not bound by the district court's prior rulings when reviewing a judgment that they reviewed de novo. Was BASF liable for punitive damages? Could that assessment be joint and several? These are all questions that the Bader 1 panel was free to decide and did. And then that, all issues that are decided by the Bader 1 panel, then become the law of the case. So there's your law of the case. That's the only law of the case that you need to look for. And that's the law of the case that the district court failed to follow when it didn't follow the remand instructions. And I'm going to reserve the remainder of my time for rebuttal. You may. Thank you. Ms. Sager. Thank you, your honor. May it please the court. The district court initially held BASF liable for punitive damages through the joint venture finding. BASF appealed that finding and a prior panel of this court vacated it, cutting the only string that tied BASF to the punitive damages award. Bader's contention here is that when the prior panel concluded that BASF was not in a joint venture, the prior panel simultaneously revived one of Bader's previously unappealed rulings, which was its claim for punitive damages against BASF. That's not a plausible reading of the prior opinion for three reasons. First, the opinion didn't explicitly say that it was reversing the district court's sufficiency of the evidence ruling. Of course, courts of appeals have wide discretion to dispose of the cases that come before them. But when the court of appeals reverses a district court finding, we generally expect the court of appeals to recognize that district court finding, explain why it's wrong, and say why it's being reversed. We don't see that here. So that's strong evidence that it didn't happen. Second, Bader didn't put this issue before the prior panel. Once BASF appealed the joint venture finding, Bader could have briefed as an alternative ground for affirmance the sufficiency of the evidence ruling. Bader didn't do that. Instead, Bader chose to lean into the joint venture finding, affirmatively arguing that the only basis for punitive damages liability for BASF was this joint venture ruling. Again, we wouldn't expect an opinion to lean into an alternative ground for an affirmance that the appellee has affirmatively disclaimed. Third, it would have been fundamentally unfair to BASF for the panel to give Bader a chance to convince a jury that BASF's individual conduct merited punitive damages, even though BASF never got the chance to tell the panel why the evidence didn't merit submission. For each of these reasons, the only plausible reading of the prior panel's opinion is the one that the district court adopted. The panel vacated BASF's punitive damages liability, full stop. Judge Erickson, to respond to the question that you asked my friend on the other side, was this an order that was lost to history? The district court said a lot of things, made a lot of rulings. It was a really complicated case with so many different issues moving at once. As it came to this court, there were eight different issues that the two separate defendants were raising. It was complicated, yes. However, there is a very clear ruling from the district court on that, and that's the JMR ruling. Well, there is a clear ruling on it, once you find it. The problem is, is that, I don't know that it was ever argued before Bader 1, the Bader 1 panel, and it wasn't briefed, and it's not easily found. And it is the proverbial needle in the haystack, unless the prior panel judges read the transcript. Because if you read the transcript, you see all these back references to it. I mean, you just, but it's like, like you said, you got to hunt it down. You find the last written order where it's represented that the ruling had been made, and you'd say, well, okay, it's got to be before that date. Then you have to go back and read the transcripts, and you see a couple of them where Judge Limbaugh says, I already ruled on that, we're done with that. And it's a, I mean, it was hidden, which is rare for what we see here. If you think that, Judge, if you think that it was hidden, then that's all the more reason to affirm what the district court did here. Because what that means is the prior panel wasn't focused on this ruling and didn't overrule it. If there is an order that stands from the district court, and the case comes to this court, and that order goes unchallenged, is not a part of the issues on appeal, then there's no reason to think that the prior panel disturbed it. Counsel, what do you do with the pyramid life? I know it's, it's not older than all of your judges. But, but it, but it, I know it's an old decision, but it has the language I'm sure you're familiar with on page 4, 413. No purpose would be served by remanding for a jury trial if there were no material fact issue for the jury to determine. And, and you know the paragraphs around it that say it in other language. That's the clearest statement of what, what it's saying there on page 13. Are we bound by that case? Your Honor, of course you're bound by this prior precedent. The, the issue that, the deeper question you're asking, are you bound by the case, but not in the way that Bader says. Of course, the prior panel remanded this case to the district court and asked the district court to carry out its instructions. That's what the district court did here. It looked at the opinion and it said, you know, there was the joint venture finding, that's been vacated. Now that that's been vacated, there's no reason to retry BASF for punitive damages liability. There could have been a trial. Monsanto could have gone to trial with Bader. The two of them could have had a whole new punitive damages trial. They chose to settle. That's not something that can be held against BASF. And the question I asked the other case, have you found a case like this where there's, there's a, I call it a change in circumstances from a much lower level law. Then we're dealing with here, but have you ever found a case where there's such a change in circumstances between the appellate and back to the district court? I'm going to fight you just a little bit on the change in circumstances. Okay. Characterization. The reason I want to fight you on that is that it's, it's an exception to the law of the case doctrine. And I think that there's, you know, a well, a well-crafted meaning to change in circumstances and change in circumstances. Thank you for educating me. My question was, did you find a case with facts like this counsel? I, no, your honor, I have not found a case like this. Okay, thanks for answering that and you can proceed with your argument. I, I've not found a case that's exactly like this one, your honor. However, I think that this isn't the type of case in which it makes sense to overrule a prior district court finding that wasn't examined by the prior panel. And the reason I don't think that it makes sense to, to, to not change the ruling that wasn't examined by the prior panel is because one, there was an opportunity for Bader to bring this issue, this argument that they're briefing now before you about whether the evidence was in fact submiss, sufficient to create a submissible case against BASF. They could have made that argument as an alternative ground for affirmance in the prior appeal. They chose not to. And I think that that decision has to have consequences. You know, if somebody puts the joint venture ruling in, in, in dispute, in evidence, says there was no way that we could have been on the hook for a joint venture, and that was the clear consequence of the vacating of that ruling. It's on the appellee to explain that there's an alternative ground for affirmance that makes this you know, this alleged error on the court, on the part of the district court, which this prior panel ultimately found was, in fact, an error, irrelevant, and that's not something that Bader did. Ultimately, your honors, I think that this is a question about fairness. I think that there was an opportunity for Bader to make the argument that they're making now, they didn't make it. I think it would be ultimately unfair to BASF to go back and give Bader a second chance to prove to a jury that the punitive damages here could be held against BASF. Ultimately, that's a, a, a question that was asked to the jury in the last trial about whether Monsanto the evidence against Monsanto was a submissible case. The jury made a specific finding that there was a submissible case. Bader didn't get that finding, or BASF didn't get that finding, and Bader is ultimately asking this court now to conclude as a matter of law, that there was a submissible case, and force us to go back and convince the jury, after we had already convinced the district court, that the evidence just wasn't there. And so, I, I think there's, there's a question of fairness here, too, about whether BASF can really be forced to, to go back and redo all of this, even though Bader failed to appeal it. What about the discussion on page 971, where this court characterizes the issue as, according to Monsanto and BASF, the district court abused its discretion by submitting punitive damages to jury, and you know the paragraphs that follow, that discuss the type of evidence, and then conclude with the sentence you call dicta, Bader provided clear and Monsanto and BASF acted with reckless indifference. Doesn't that negate almost anything Judge Limbaugh found in an order? So, two answers to that question, Your Honor. One is that, you know, reading opinions isn't like reading statutes. There, there is a role for context. There is a role for history. There is a role for understanding what happened before, in order to understand what's happening now. And I think that, for the reasons that I've given you before, the context suggests that this isn't what the, these words in the opinion mean. They can't be read the way that Bader's suggesting. The second answer that I'd give you is that the panel, the prior panel can characterize these arguments as belonging to both Monsanto and BASF because BASF also made these arguments. BASF was on the hook, was vicariously liable for Monsanto's actions because of this joint venture finding. So BASF briefed the punitive damages issue because it, it, it wanted out of, of those very same of those very same findings. And so I, I think it, you know, it, the reason why the prior panel then said the evidence was as it was, is because it was in the habit of speaking about Monsanto and BASF's collective arguments against the punitive damages ruling. It's just that earlier, the panel, the panel had concluded that BASF was not in a joint venture with Monsanto, meaning that this discussion with respect to whether the evidence showed that Monsanto and BASF were liable for punitive damages didn't, didn't, didn't ultimately apply to the conduct that, that BASF engaged in, in 2015 and 2016, which was the relevant punitive damages timeframe. So we, we found there was no joint venture liability, or no joint venture, right? How about co-conspirator punitive damages? So the co-conspirator theory was not applicable to the punitive damages part of the case. The district court had made a finding very early on, both before and after trial, that there was a very meaningful difference between 2015 and 2016 and 2017 on, and during that 2015 and 2016 timeframe, the district court concluded that that was the only timeframe that was relevant for punitive damages because that was the time that the seed was on the market without a corresponding low, low volatility dicamba, and also because that was the time that Monsanto made unilateral decisions with respect to the seed release, that only Monsanto could be liable for punitive damages, and only during that 2015 and 2016 period of time. The conspiracy liability pertained to the actual damages, and the conspiracy liability isn't related to the punitive damages question in the 2017, 2015, 2016 time period that the district court had specifically found. BASF's individual conduct didn't add up to a punitive damages ruling there. Counsel, what do you do with the flat language in the prior opinion? It's about B, it's about BASF. The best evidence in February 2015, BASF advised, and there are two or three quotes in that time period that you're talking about that the court's discussing on page 971, what, what can you do with that language? I think that what you can do with that language, your honor, is care, is understand that it's a discussion of whether punitive damages were submissible at all. You know, Monsanto and BASF were both fighting the submissibility of punitive damages under the Lopez factor, and this court walked through the various evidence that came into the trial during about that 2015 to 2016 period and says, you know, collectively, the evidence that, that was seen during that time period was evidence that made out a submissible case for punitive damages. I don't think that you have to read the words and BASF or the reference to BASF's conduct in that time to be a conclusion that the district court's sufficiency of the evidence ruling was wrong. And, and I think that for two reasons, your honor. First, we didn't get the chance to brief it. BASF didn't have the chance to come to this court and say, this is, this is why the evidence that you're pointing to isn't enough. You know, we didn't have a chance to tell you about how our sales went down in that period. We didn't have a chance to tell you about how we told our, the farmers that we work with and the employees of us that they'd get fired if they tried to market. Is that a jury argument, counsel? To the extent that it is an argument about sufficiency of the evidence, which, you know, does go to a jury, unless as a matter of law a court decides that the evidence isn't there. These are the types of arguments and explanations that we would have made had this issue been before the panel. But instead, it, it wasn't, and so the panel didn't get to hear BASF's side of, of, of that argument. It didn't get to hear the reasons why the district court, after three weeks of trial, decided there wasn't a case against BASF on, on punitive damages. Yeah, but it's on joint venture basis. Except on, except through joint venture liability, which the district court had believed meant that it didn't matter what BASF's individual conduct showed, which is not the case for conspiracy liability. So I, I do think, Your Honor, that even though there are some references to BASF's conduct here, the best reading of that is that the court was just looking at all of the evidence that pertained to 2015, 2016, and saying there was a submissible case here in general against someone, and that someone was Monsanto because of these earlier district court rulings. If there are no further questions, we would urge the court to affirm the district court's ruling. Let me be sure no more further questions. Any? None? Thank you, counsel, for your argument, and Ms. George, we're about. Thank you, Your Honors. I just, I did want to dispel one bit of confusion. I do believe the Bader 1 panel was aware that the district court had previously refused to allow submission of punitive damages against Monsanto. First of all, it's mentioned in the Bader 1 panel's decision, where it acknowledges that only Monsanto was referenced in the punitive damages instructions, only Monsanto was put before the jury in the punitive damages phase. BASF made no argument. Also, in BASF's opening brief, an appeal, it notified the panel that the district court had ruled. On page, this is in page 189 of the appendix, but it's also RDoC 572 at page two. In their briefing, BASF says, notably, the court determined that the matter of punitive damages could only go to the jury on 2015 and 2016 conduct, which involved the rollout of Monsanto's seed. So this was, well, that's in the 572, I'm sorry, that's in Doc 572, which is the district court's order, which BASF submitted in the Bader 1 panel, in the Bader 1 phase. So this wasn't a secret. I know that the opinion could have been better formalized, but at the end of the day, like I said, it doesn't matter because you appeal from judgments. And the judgment allowed joint and several liability for punitives against BASF. And this is another reason why there was no need to cross-appeal. There was no, we didn't waive anything. Bader Farms didn't waive anything by not arguing alternative grounds. Just like Judge Cobes, you held in the Doe v. University of St. Thomas case. You don't have to cross-appeal for the appellate court to affirm on a different reason. You don't have to argue every alternate ground. And I think you even cited Judge Benton's decision in that case in Spurtus v. Nautilus, where you said, Judge Benton, you can affirm on any reason in the record. And you don't have to cross-appeal every alternate possible grounds or anticipate. Well, if the court does this, maybe I should file a protective appeal to seek some other relief on some other basis. That's just not how the cross-appeal rule works. We don't need an exception to the cross-appeal rule. It just doesn't apply. Also, the argument that we made during the Bader One appeals focusing on the joint venture liability for punitive damages, where Bader Farms said, look, there's no requirement to show individualized conduct for that award because it flows by operation of law from the joint venture finding. That was in no way a concession that BASF somehow didn't act recklessly and different in the course of the conspiracy. That was no way a concession that conspiracy can't carry a punitive damages liability. It's just when you're responding to an allegation that there shouldn't be punitive damages and that there shouldn't be a joint venture finding, you're going to argue the obvious, which is that for joint venture, there doesn't have to be an individualized assessment. BASF, though, asked the court and told the court it was entitled to an individualized assessment and in its briefing said, without it, you can't have joint or several liability. Punitive damages isn't a standalone claim. Punitive damages is an item of damages that may or may not be available if there's reckless indifference in the course of the underlying tort or the underlying conspiracy. So, it's not necessary that we argue, when the Bader 1 panel decides joint venture goes away and you have BASF saying, well, we can't face liability, joint or several, for punitive damages without an individualized finding, the Bader 1 panel has to look at what are the remaining claims and what did the jury find. What the jury found is that these two companies conspired to commercialize a product with the expectation that they were going to damage innocent third-party farmers and drive their own sales. The Bader 1 panel doesn't have to put on horse blinders and focus only on the impact of joint venture going away when you have a conspiracy finding that, in and of itself, exhibits reckless indifference. It doesn't get more reckless than commercializing a product, expecting to damage people so you can drive your own sales. The Bader 1 panel got it right, because just because the joint venture goes away, you have to look at what happens with the affirmance of the conspiracy. They asked for an individualized assessment for an award of punitive damages. You cannot send that case back. You cannot take away the verdict of punitive damages against Monsanto when there's no error identified in that assessment except for the fact that BASF wasn't a part of it. We ask this court to remand and instruct the district court to follow the instructions. Thank you. Thank you both counsel for the arguments. Very well done. And case number 23-1134 is submitted for decision by the court.